# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 20-22313-Civ-COOKE/GOODMAN

SAMIR MOUSSA and
JAMILE MOUSSA,

    Plaintiffs,

v.

CERTAIN UNDERWRITERS AT
LLOYD'S, LONDON,

    Defendant.
_____/

## ORDER GRANTING RENEWED MOTION TO REMAND

**THIS MATTER** is before the Court on Plaintiffs' Renewed Motion to Remand and for Attorney's Fees (the "Motion"), filed January 5, 2021. ECF No. 14. Defendant Certain Underwriters at Lloyd's, London filed a memorandum in opposition to the Motion on January 19, 2021. ECF No. 15. Plaintiffs filed a reply in support of their Motion on January 26, 2021. ECF No. 16. As such, the Motion is ripe for adjudication. Having reviewed the Motion, the briefing related thereto, and the relevant legal authorities, for the reasons set forth below, the Motion is granted.

### BACKGROUND

This is an action for damages arising from an alleged breach of an insurance contract. On May 4, 2020, Plaintiffs filed their Complaint in the Eleventh Judicial Circuit in and for Miami-Dade County against Defendant Certain Underwriters at Lloyds, London ("Defendant Certain Underwriters" or "Defendant"). Then, on June 3, 2020, Defendant Certain Underwriters removed this matter to this Court pursuant to 28 U.S.C. §§ 1332(a), 1441, and 1446. ECF No. 7-1. Defendant Certain Underwriters filed a Notice of Removal alleging that Plaintiffs are "citizens and residents of Miami-Dade County, Florida" and Defendant Certain Underwriters is a "London, England-based corporation with its principal place of business in London, England." ECF No. 7-1 at 6.

On July 6, 2020, Plaintiffs filed their first motion to remand challenging this Court's jurisdiction on the grounds that Defendant Certain Underwriters failed to establish diversity of the individual members of its underwriting syndicates. ECF No. 6. In rebuttal, Defendant Certain Underwriters identified three syndicates that underwrote the Policy at-issue, namely, Aspen Syndicate 4711, Noa Syndicate 3902, and The Standard Syndicate 1884. Further, Defendant Certain Underwriters argued that "[a]ll of the above identified underwriting syndicates for the at-issue policy are foreign entities which are completely diverse to Plaintiffs' citizenship here in the state of Florida. As such, the requirements necessary to establish complete diversity of the parties have been properly established in this matter". ECF No. 7 at 3.

Then, on December 9, 2020, this Court issued an Order Denying Plaintiff's first motion to remand without prejudice. In doing so, the Court held that "because Defendant Certain Underwriters failed to plead the citizenship of each of its Syndicates' member Names, the Notice of Removal fails to establish diversity jurisdiction." ECF No. 12 at p. 12. The Court, however, provided Defendant Certain Underwriters with an opportunity to cure this procedural defect through an amended notice of removal. *Id.* at p. 5. *See Dye v. Sexton*, 695 F. App'x. 482, 485 (11th Cir. 2017) ("[i]f a party fails to specifically allege citizenship in [its] notice of removal, the district court should allow that party to cure the omission, as authorized by § 1653.") (citations and quotation marks omitted). As a result, Defendant Certain Underwriters filed an Amended Notice of Removal on December 23, 2020. ECF No. 13. In response to the Amended Notice of Removal, Plaintiffs filed the present Motion to Remand. In this Motion, Plaintiffs, once again, argue that Defendant Certain Underwriters failed to plead the citizenship of each of its Syndicates' member Names. The Court agrees.

## LEGAL STANDARD

Federal courts have original jurisdiction over matters involving parties of diverse citizenship. 28 U.S.C. § 1332(a). For diversity jurisdiction to attach, all parties must be completely diverse and the amount in controversy must exceed $75,000. *See* 28 U.S.C. § 1332(a); *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085-1086 (11th Cir. 2010). The party commencing suit in federal court has the burden of establishing, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction. *See* Fed. R. Civ. P. 8(a)(1); *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002).

## ANALYSIS

"For well over a century, federal law has drawn a sharp distinction between corporations and virtually every other form of association for purposes of determining diversity of citizenship. On the one hand, corporations are considered legal persons whose citizenship does not depend on that of their shareholders . . . [o]n the other hand, unincorporated associations do not themselves have any citizenship, but instead must prove the citizenship of each of their members to meet the jurisdictional requirements of 28 U.S.C. § 1332." *Osting-Schwinn*, 613 F.3d at 1086. Thus, for purposes of determining diversity of citizenship, only corporations – incorporated entities – are legal persons with their own citizenship and all unincorporated associations must plead the citizenship of each of their members. The Eleventh Circuit has recognized that underwriters "fall squarely within the class of unincorporated associations for which the pleading of every member's citizenship is essential to establishing diversity jurisdiction." *Id.* at 1088–89.

the Eleventh Circuit's decision in *Underwriters at Lloyd's, London v. Osting-Schwinn* is instructive. There, the Eleventh Circuit provided a helpful analysis of the Lloyd's of London insurance framework. In doing so, the Court explained:

> The Society of Lloyd's, London, is not an insurance company, but rather a British organization that provides infrastructure for the international insurance market. . . . Lloyd's itself does not insure any risk. Individual underwriters, known as "Names" or "members," assume the risk of the insurance loss. Names can be people or corporations; they sign up for certain percentages of various risks across several policies. Once admitted to the Society of Lloyd's, each Name is subject to a number of bylaws and regulations ensuring that he or she is solvent and "that at all times there are available sufficient funds" to pay all claims. *See, e.g.*, Lloyd's Act, 1982, c. 14 § 8. <u>Critical to the diversity jurisdiction question, Names are not only British citizens, but may be of many nationalities.</u> Lloyd's Act, 1982, c.14, pmbl. (5). Names underwrite insurance through administrative entities called syndicates, which cumulatively assume the risk of a particular policy . . . The syndicates are not incorporated, but are generally organized by Managing Agents, which may or may not be corporations. The Managing Agents determine the underwriting policy for the syndicate and accept risks on its behalf, retaining a fiduciary duty toward the underwriting Names. As mere administrative structures, the syndicates themselves bear no risk on the policies that they underwrite; the constituent Names assume individual percentages of underwriting risk. The Names are not liable for the risks that the other Names assume. Lloyd's Act, 1982, c. 14 § 8(1). Names purchase insurance through underwriting agents. Lloyd's Act, 1982, c. 14 § 8(2). Lead underwriters, or active underwriters, serve as the public faces

> for particular syndicates. . . . In the event of a suit over a Lloyd's policy, the lead underwriter is often named specifically in the suit. *See, e.g., E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925 (2d Cir.1998) (naming Allan Peter Dennis Haycock, lead underwriter, in the suit); *Hilton Oil Transport v. Jonas*, 75 F.3d 627 (11th Cir.1996) (naming lead underwriter T.E. Jonas in a suit over marine insurance). Crucially, each Name's liability is several and not joint. Thus, the Lloyd's Act of 1982 provides that an 'underwriting member shall be a party to a contract of insurance underwritten at Lloyd's only if it is underwritten with several liability, each underwriting member for his own part and not one for another, and if the liability of each underwriting member is accepted solely for his own account.' Lloyd's Act, 1982, c.14, § 8(1). *See also* Lloyd's Act, 1871, c. 14 § 40 ('Nothing in this Act shall confer limited liability on the members of the Society, or in any manner restrict the liability of any member thereof in respect of his individual undertakings, or make any member of the Society as such responsible in any manner for any of the undertakings, debts, or liabilities of any other member of the Society as such, or affect or interfere with or empower the Society or the Committee to interfere with any business whatever other than the business of insurance carried on by any member of the Society.'). Through contractual agreement, the other Names that are members of the underwriting syndicates on the policy remain liable for their proportional share of any adverse judgments. . . . Thus, the legal relationship between the Names and the insured is a vertical one: it is the individual Names, not the syndicate, who are directly liable in the event of loss, as if each Name had a contract with the insured.

*Osting-Schwinn*, 613 F.3d at 1083-1084 (emphasis added). Thus, Names can be people or corporations, and names can be of many nationalities. This is critical to a diversity jurisdiction analysis. And failure to include this information in a notice of removal is a glaring omission.

Furthermore, the Eleventh Circuit has recognized that "[b]oth legally and structurally, the Lloyd's syndicates are classic examples of unincorporated associations; they are 'bod[ies] of persons acting together, without a charter, but upon the methods and forms used by corporations, for the prosecution of some common enterprise.'" *Id.* at 1089 (quoting *Penrod Drilling Co. v. Johnson*, 414 F.2d 1217, 1222 (5th Cir.1969)). *See also Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916, 921 n. 6 (11th Cir.2003). As a result, in order to establish diversity jurisdiction, regardless of the "syndicates' peculiar characteristics", Defendant Certain Underwriters must plead the citizenship of each of the Syndicates' member Names. *Id.* Here, because Defendant Certain Underwriters failed to plead the citizenship of each of its Syndicates' member Names, the Amended Notice of Removal fails to establish diversity jurisdiction.

4

In the Amended Notice of Removal, Defendant Certain Underwriters alleges the following:

> Though identified by Plaintiffs as Certain Underwriters at Lloyd's, London, Defendant Underwriters actually consists of three underwriting entities which subscribe to the at issue insurance Policy. Defendant hereby states that the following syndicates underwrote the Policy at-issue: Aspen Syndicate 4711, Noa Syndicate 3902, and The Standard Syndicate 1884. Aspen Syndicate 4711 is managed by Aspen Managing Agency Limited ("AMAL"), which is a wholly owned subsidiary of Aspen Insurance Holdings Limited ("AHL"), a Bermuda exempted company. Aspen Underwriting Limited is a British Company and the sole Lloyd's Corporate Member for AMAL and is also a wholly owned subsidiary of AHL. AHL is a wholly owned subsidiary of Highlands Holdings, Ltd., a Bermuda exempted company. As such, Aspen Syndicate 4711 maintains its citizenship in the British island territory of Bermuda. Noa Syndicate 3902 is owned and managed by Ark Syndicate Management, Ltd., which is a British company, thereby maintaining citizenship in England. The Standard Syndicate 1884 is owned and managed by Premia Managing Agency, a Bermuda-based company, thereby maintaining citizenship in the British island territory of Bermuda.

ECF No. 13 at ¶¶ 5-7.

It is not enough, however, for Defendant Certain Underwriters to simply allege that Aspen Syndicate 4711, Noa Syndicate 3902, and Standard Syndicate 1884 are British and/or Bermudan companies. A corporation can have multiple places of citizenship -- the state in which it is incorporated, the foreign state in which it is incorporated, and the state or foreign state where it has its principal place of business. 28 U.S.C. § 1332(c)(1*); see also Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1346 (11th Cir. 2011) (noting that corporations are "citizens" for diversity purposes wherever they are incorporated and have their principal place of business, and as a result, "corporations may be citizens of multiple states"). Here, while Defendant Certain Underwriters has loosely identified the Syndicates' members' places of incorporation, Defendant has failed to indicate where the Syndicates' have their principal places of business. *See Alliant Tax Credit Fund XVI, Ltd. V. Thomasville Cmty. Hous., LLC*, 713 F. App'x 821, 824 (11th Cir. 2017) ("To allege the citizenship of a corporation, a party must identify every state by which the company has been incorporated and the state where it has its principal place of business."); *see also See Old Cove Condo. of Naples, Inc. v. Underwriters at Lloyd's, London*, 218CV384FTM29MRM, 2018 WL 5077797, at *2 (M.D. Fla. Oct. 18, 2018) (remanding case where defendants failed to allege the place of business of the corporate

members of a syndicate.). Having failed to offer this information, Defendant Certain Underwriters has not met its burden to establish the Court's subject matter jurisdiction over this matter. Accordingly, the Court remands this matter to state court.

In addition to remand, Plaintiffs seek attorney's fees for the improper removal of this matter. "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C.A. § 1447(c). However, "[a]n award of attorney's fees pursuant to section 1447(c) is discretionary and turns on the reasonableness of the removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139, 141 (2005). "[A]bsent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." *Id.* at 136. Here, Defendant Certain Underwriters had two bites at the proverbial apple: the initial Notice of Removal and the Amended Notice of Removal. Moreover, in this Court's December 9, 2020 Order Denying Plaintiffs' Motion to Remand Without Prejudice, the Court directed Defendant to file an amended notice of removal that established the citizenship of each of its syndicate members. But Defendant has, once again, failed to do so. Further, Defendant could have simply agreed to remand this matter after Plaintiffs filed the present Motion (which pointed out the defects in Defendant's Amended Notice of Removal); instead, however, Defendant chose to go forward with its defective Amended Notice of Removal. As such, the Court finds that an award of attorney's fees and costs is appropriate here as there was not an objectively reasonable basis for removal.

Accordingly, it is hereby **ORDERED and ADJUDGED** as follows:

1. Plaintiffs' Renewed Motion to Remand and Motion for Attorney's Fees, ECF No. 14, is **GRANTED**. Within fourteen (14) days of this Order, Plaintiffs shall file an affidavit and supporting invoices detailing the attorney's fees and costs they incurred as a result of removal. Defendant may then file a response in opposition within fourteen (14) days thereafter.

2. The Clerk is directed to remand this case to the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, and to transmit a certified copy of this Order to the Clerk of that Court.

3. The Clerk is further directed to terminate all pending motions and deadlines, and to **CLOSE** the case.

**DONE and ORDERED** in Chambers at Miami, Florida this 30th day of June 2021.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*All Counsel of record*